UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARL J. RATERMANN and<br>VICKI L. RATERMANN<br><br>    Plaintiffs,<br><br>    v.<br><br>CELLCO PARTNERSHIP,<br>VERIZON WIRELESS (VAW), LLC,<br>BELL ATLANTIC CELLULAR<br>HOLDINGS, LP, GTE WIRELESS<br>INCORPORATED, VERIZON<br>COMMUNICATIONS, INC.,<br>CYBERTEL CORPORATION,<br>CELLULAR MOBILE SYSTEMS<br>OF MISSOURI, INC.,<br>and GENSUB, INC.<br><br>    Defendants. | No. 4:09 CV 126 DDN |

**MEMORANDUM AND ORDER**

This action is before the court on the motion of plaintiffs, Carl J. Ratermann and Vicki L. Ratermann, to remand the case to state court (Doc. 8.), and the motion of defendants for leave to amend by interlineation (Doc. 12.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 19.)

For the reasons set forth below, the court sustains the motion to remand.

**I. BACKGROUND**

On December 11, 2008, Carl and Vicki Ratermann brought this breach of contract action against the defendants in the Circuit Court of the City of St. Louis. (Doc. 1, Ex. A.) In their complaint, the Ratermanns allege that a constructed cellular telephone tower is located on the property they own in Kirkwood, Missouri. (Id. at ¶ 1.) According to the complaint, the property in question was originally owned by J.W. Sullivan Co. (Id. at ¶ 12.) On December 17, 1997, J.W. Sullivan Co. allegedly leased the Kirkwood property to CyberTel Cellular Telephone

Company (CCTC) as tenant.[1] (Id. at ¶¶ 2, 12.) According to Article VI of the lease agreement between J.W. Sullivan Co. and CCTC,

> If Tenant allows any other user or entity on the Premises, in addition to Tenant, either by assignment or subletting, or by any other agreement, then Landlord shall receive 33 1/3% of any monies Tenant receives from the other such user or entity. . . .

(Doc. 1, Ex. A at 44.)

On September 1, 2000, CCTC allegedly assigned its rights and interests as a tenant to Crown Castle GT Company, LLC (Crown Castle). (Id. at ¶ 16.) The defendants allegedly received consideration for this assignment. (Id. at ¶ 17.) Meanwhile, according to the complaint, ownership of the Kirkwood property had also changed hands. (Id. at ¶¶ 14-15, 18-20.) The complaint alleges J.W. Sullivan Co. conveyed the property to John W. Sullivan and Constance D. Sullivan on December 11, 1998, who then conveyed it to Wild Wild West LLC on November 18, 1999, who then conveyed it to L. Scott Thomlinson and Marye Otto Thomlinson on October 18, 2002, who then, finally, conveyed the property to the Ratermanns on October 19, 2005. (Id.)

In their complaint, the Ratermanns allege that the defendants breached their duties and obligations under Article VI of the Lease Agreement by failing to pay them 33 1/3% of Crown Castle's payment to the defendants. (Id. at ¶ 25.) The plaintiffs also allege that three of the defendants, CyberTel Corporation, Cellular Mobile Systems of Missouri, Inc., and Gensub, Inc., failed to notify them of their dissolution, and failed to publish notice of their dissolution, as required by § 351.478 and § 351.482 of the Missouri Revised Statutes.

---

[1]According to documents filed with the Missouri Secretary of State on December 17, 1987, CCTC is a fictitious name. CyberTel Corporation, Cellular Mobile Systems of Missouri, Inc., and Gensub, Inc. are the parties having an interest in CCTC, with their respective interests 77.5%, 15%, and 7.5%. (Doc. 9, Ex. 2.)
According to an FCC Wireless Telecommunications Bureau Application for Assignments of Authorization and Transfers of Control, previewed on November 30, 1999, CyberTel Corporation and Cellular Mobile Systems of Missouri, Inc. were the only two parties having an interest in CCTC, with their respective partnership interests 85% and 15%. (Doc. 1, Ex. E at 3.)

(Id. at ¶ 26.) As a proximate result of these events, the Ratermanns claim they were "damaged by at least $25,000.00." (Id. at ¶ 27.)

On January 16, 2009, the defendants removed the case to this court, invoking diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). (Doc. 1 at ¶ 5.)

## II. MOTION TO REMAND

The Ratermanns move to remand this case to the Circuit Court of St. Louis County. (Doc. 8.) They argue that the defendants failed to timely file their notice of removal, the amount in controversy does not exceed $75,000, and the parties are not completely diverse. In particular, the Ratermanns argue that an unverified declaration cannot support the amount in controversy, and that the citizenship of a dissolved corporation must be considered for diversity purposes. (Docs. 9, 13.)

In response, the defendants argue that they timely filed their notice of removal, they have demonstrated the amount in controversy exceeds $75,000 through the declaration of Marion Crable, and the parties are completely diverse. In particular, the defendants argue that the citizenship of the dissolved corporations cannot be considered for diversity purposes and that the plaintiffs do not have a colorable claim against some of the defendants. (Doc. 11.)

## III. DISCUSSION

If a district court has original jurisdiction over a civil action, that case may be removed from the state court to the district court. 28 U.S.C. § 1441(a). A district court has original jurisdiction of any civil case where the amount in controversy exceeds the sum of $75,000, and the action is between citizens of different states. 28 U.S.C. § 1332(a). For diversity purposes, a corporation is considered a citizen of the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c).

**Removal Deadlines**

To remove a case to federal court, a defendant must file its removal notice "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the [complaint]. . . ." 28 U.S.C. § 1446(b); Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347 (1999). The thirty-day deadline in the statute refers only to official notice, with formal service of process. Murphy Bros., 526 U.S. at 347-48. It does not refer to mere receipt of the complaint, by way of a "courtesy copy" for example, unattended by any formal service. Id.

In this case, the first defendant was served on December 19, 2008. (Doc. 9, Ex. 1 at 1.) The notice of removal was filed with this court on January 16, 2009. (Doc. 1.) The notice of removal was therefore within the thirty-day statutory period.

**Amount in Controversy**

A complaint will be dismissed for lack of subject matter jurisdiction, unless it appears to a legal certainty that the value of the claim exceeds the requisite $75,000. Advance Am. Servicing of Ark., Inc. v. McGinnis, 526 F.3d 1170, 1173 (8th Cir. 2008). To determine the amount in controversy, the court looks to "the value to the plaintiff of the right sought to be enforced." Id. The party invoking federal jurisdiction bears the burden of proving the amount in controversy exceeds $75,000. Id. This is true even if the plaintiff does not allege a specific amount of damages. O'Keefe v. Midwest Transit, Inc., No. 4:06 CV 1060 DDN, 2006 WL 2672992, at *1 (E.D. Mo. Sept. 18, 2006) (finding the amount in controversy exceeded $75,000 where the plaintiff's complaint prayed for a judgment of "more than Twenty-Five Thousand Dollars ($25,000.00)").

To prove the amount in controversy by a preponderance of the evidence, the defendant must provide sufficient proof that the plaintiff's verdict may reasonably exceed that amount. Id. A court must consider the actual value of the claims at issue; it cannot simply rely on the values stated in the pleadings. Id. "Any amounts stated in the petition are not determinative, and the court must look to the

substance of the claim to determine if federal jurisdiction is present." Id. To determine the substance of the claim, the court may consider the notice of removal as well as affidavits of the parties. Id.; see also Saab v. Home Depot U.S.A., Inc., No. 06-0319-CV-W-SOW, 2006 WL 1877077, at *2 n.1 (W.D. Mo. July 6, 2006), petition dismissed, 469 F.3d 758 (8th Cir. 2006) ("The Eighth Circuit Court of Appeals has authorized district courts to consider affidavits . . . either to support or defeat diversity jurisdiction.").

The Ratermanns' complaint seeks "actual damages of at least $25,000. . . ." (Doc. 1, Ex. A at 28.) However, the plaintiffs do not provide any indication of how they arrived at this figure. As noted above, the figure in the complaint is not determinative of the actual value of the claim. O'Keefe, 2006 WL 2672992, at *1.

In contrast, the defendants have attached to their response the declaration of Marion S. Crable. (Doc. 11, Ex. A.) In the declaration, Crable swears that CCTC (as tenant) and J.W. Sullivan Co. (as landlord) entered into a lease on December 17, 1997, with respect to the Kirkwood property. (Id. at ¶ 3.) According to the declaration, CCTC subsequently assigned to Crown Castle its interest as tenants in the lease for "an amount in excess of $225,000. . . ." (Id. at ¶ 4.) Crable swears to have personal knowledge of these facts. (Id. at ¶ 1.)

In their complaint, the Ratermanns seek to recover one-third of the amount the defendants received from Crown Castle as part of the assignment of the Kirkwood property. (Doc. 1, Ex. A at ¶ 22). "Under § 6.1 of the Lease Agreement, Plaintiffs are entitled to receive 33.3% of all monies and other consideration received by . . . CCTC arising out of CCTC's assignment of the Lease Agreement to Crown Castle. . . ." (Id.) According to Crable, CCTC received more than $225,000 from Crown Castle for the assignment. One-third, or 33.3%, of an amount in excess of $225,000 is an amount in excess of $75,000.

The defendants have provided sufficient proof that the actual value of the plaintiffs' claim exceeds $75,000.

**Complete Diversity**

For diversity purposes, a corporation is considered a citizen of the state where it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c). The ability to sue a corporation is determined by looking to the state law under which the corporation was organized. Fed. R. Civ. P. 17(b)(2). This rule applies with equal force to a dissolved corporation. See Ripalda v. Am. Operations Corp., 977 F.2d 1464, 1468 (D.C. Cir. 1992); O'Very v. Spectratek Techs., Inc., No. CV 03-540 CBM (PJWx), 2003 WL 25781232, at *2 (C.D. Cal. Aug. 7, 2003); Barrett v. Waldbauer, 32 F. Supp. 2d 1222, 1224 (D. Or. 1998). Under Rule 17(b), "a dissolved corporation may still be sued if permitted under the law of the state of incorporation." R.J. Reynolds Tobacco Co. v. Johns Manville Int'l, Inc., No. Civ. 1:00 CV 673, 2001 WL 823604, at *2 (M.D.N.C. July 3, 2001).

In Missouri, a "dissolved corporation continues its corporate existence" while it winds down its affairs. Mo. Rev. Stat. § 351.476.1. More to the point, the statute specifically states that dissolution does not "[p]revent commencement of a proceeding by or against the corporation in its corporate name." Mo. Rev. Stat. § 351.476.2(5). This section clearly demonstrates that an administratively dissolved corporation is a legal entity, which can be sued in its corporate name by serving the registered agent. McCormick v. Cupp, 106 S.W.3d 563, 568 (Mo. Ct. App. 2003); Mabin Constr. Co., Inc. v. Historic Constructors, Inc., 851 S.W.2d 98, 103 (Mo. Ct. App. 1993). "[W]e have no trouble concluding that the legislature's intent in passing this statute was to prescribe the correct procedure for litigation involving dissolved corporations." Gunter v. Bono, 914 S.W.2d 437, 439-40 (Mo. Ct. App. 1996).

The Missouri Legislature passed § 351.476 in 1990, part of several major revisions to the state's laws governing businesses and corporations. In re R.L. Jones & Sons, Inc., 201 B.R. 249, 251 (Bankr. W.D. Mo. 1996). Among the changes, the 1990 amendments replaced the concept of forfeiture of the corporate charter with the concept of administrative dissolution. Id. Given these changes to the law, the defendant's reliance on State of Missouri ex rel. Darr is misplaced. (Doc. 11 at 4) (citing State of Missouri ex rel. Darr v. A.B. Collins

& Co., 34 F. Supp. 550 (W.D. Mo. 1940)). In ex rel. Darr, the court relied on statutory language, which spoke of the forfeiture of corporate rights and privileges. Ex rel. Darr, 34 F. Supp. at 552. Looking to the 1990 amendments and the subsequent case law, ex rel. Darr is inapposite. See In re R.L. Jones, 201 B.R. at 251.

Looking to Mo. Rev. Stat. § 351.476.2(5) and the relevant case law, it seems clear that a federal court must consider the citizenship of a dissolved corporation for purposes of diversity jurisdiction. This conclusion comports with decisions of other federal courts that have interpreted corporate dissolution statutes with language similar to § 351.476. Ripalda, 977 F.2d at 1468 (finding 8 Del. Code Ann. § 278 required the court to consider the citizenship of the dissolved corporation); Downey v. Ambassador Dev., LLC, 568 F. Supp. 2d 28, 30-32 (D.D.C. 2008) (finding D.C. Code § 29-1050 required the court to consider the citizenship of the dissolved corporation); O'Very, 2003 WL 225781232, at *2 (finding Utah Code Ann. § 16-10a-1405(2)(e) required the court to consider the citizenship of the dissolved corporation); R.J. Reynolds Tobacco Co., 2001 WL 823604, at *2 (finding N.C. Gen. Stat. § 55-14-05(b)(5) required the court to consider the citizenship of the dissolved corporation); Barrett, 32 F. Supp. 2d at 1224 (finding Or. Rev. Stat. § 60.637(2)(e) required the court to consider the citizenship of the dissolved corporations). More to the point, the statutory provisions considered in O'Very, R.J. Reynolds Tobacco Company, and Barrett, are not just similar to § 351.476.2(e), they are identical. Compare Mo. Rev. Stat. § 351.476(2)(e), with N.C. Gen. Stat. § 55-14-05(b)(5); Or. Rev. Stat. § 60.637(2)(e); Utah Code Ann. § 16-10a-1405(2)(e) (each stating that "Dissolution of a corporation does not: Prevent commencement of a proceeding by or against the corporation in its corporate name.").

In this case, Cybertel Corporation filed articles of dissolution with the state of Illinois, which became effective on July 10, 2000. (Doc. 1, Ex. C.) Cellular Mobile Systems of Missouri, Inc. filed articles of dissolution with the state of Missouri on December 26, 2006, which became effective on December 31, 2006. (Doc. 1, Ex. D.) Cellular Mobile Systems of Missouri was incorporated in Missouri on March 29,

1982. (Doc. 9, Ex. 4.)  Gensub, Inc. filed articles of dissolution and a request for termination with the state of Missouri on July 10, 2000. The state of Missouri issued Gensub, Inc. a certificate of termination, effective July 10, 2000. (Doc. 1, Ex. F.) Gensub, Inc. was incorporated in Missouri on February 22, 1982. (Doc. 9, Ex. 3.)

Under § 351.476.2(5), Gensub, Inc. and Cellular Mobile Systems of Missouri, Inc. are Missouri citizens. If properly joined, these defendants will defeat diversity jurisdiction, and the case must be remanded.

**Fraudulent Joinder**

A court may disregard the citizenship of a non-diverse or resident defendant, if that defendant has been fraudulently joined in order to defeat removal. Hutton v. Teva Neuroscience, Inc., No. 4:08 CV 1010 CEJ, 2008 WL 4862733, at *2 (E.D. Mo. Nov. 7, 2008). Joinder is fraudulent and removal is proper if there is "no reasonable basis in fact and law supporting a claim against the resident defendants." Wilkinson v. Shackelford, 478 F.3d 957, 964 (8th Cir. 2007). Joinder is not fraudulent as long as there is a reasonable basis in fact and law supporting the claim. Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 810 (8th Cir. 2003). "[I]f there is a 'colorable' cause of action - that is, if the state law might impose liability on the resident defendant under the facts alleged - then there is no fraudulent joinder." Id. The standard for determining fraudulent joinder is even more favorable than the standard for ruling a motion to dismiss under Rule 12(b)(6). Hutton, 2008 WL 4862733, at *2. To that end, the district court should resolve all facts and ambiguities in the substantive law in the plaintiff's favor. Filla, 336 F.3d at 811. The district court may not decide the actual merits of the case. Moss v. Defender Servs., Inc., No. 1:08 CV 88 CAS, 2009 WL 90136, at *2 (E.D. Mo. Jan. 14, 2009).

In their complaint, the Ratermanns allege the defendants breached their duties and allegations under the Lease Agreement. (Doc. 1, Ex. A at ¶ 25.) The Ratermanns also allege that Cellular Mobile Systems of Missouri and Gensub failed to notify them of their dissolution, as required by Missouri law. (Id. at ¶ 26.)

Under Missouri law, "[t]he corporation shall notify its known claimants in writing by United States Postal Service of the dissolution at any time after dissolution is authorized." Mo. Rev. Stat. § 351.478.2. The plaintiffs allege that Cellular Mobile Systems of Missouri, Inc. and Gensub, Inc., are Missouri corporations that have been dissolved. (Doc. 1, Ex. A at ¶¶ 7-8.) They further allege that CCTC has failed to pay them the consideration received from the assignment to Crown Castle, breaching the lease agreement. (Id. at ¶ 25.) Finally, the plaintiffs allege that Cellular Mobile Systems and Gensub were general partners of CCTC, and therefore liable for any of CCTC's obligations to them under article VI of the lease agreement. (Id. at ¶ 23.)

Resolving any disputed facts in the plaintiff's favor, these allegations are sufficient to state a cause of action under Mo. Rev. Stat. § 351.478.2. The plaintiffs have a colorable cause of action against the two resident defendants. Accordingly, Cellular Moblile Systems of Missouri, Inc. and Gensub, Inc. were not fraudulently joined to defeat diversity.

## IV. CONCLUSION

The defendants removed the case to this court, invoking diversity of citizenship subject matter jurisdiction under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). However, because complete diversity does not exist,

**IT IS HEREBY ORDERED** that the motion of plaintiffs, Carl J. Ratermann and Vicki L. Ratermann, to remand the case to the Circuit Court of the City of St. Louis (Doc. 8) is sustained.

**IT IS FURTHER ORDERED** that the motion of defendants for leave to amend by interlineation (Doc. 12) is deferred to the state court.

/S/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on April 28, 2009.